Sharon S. Moyer No. 013341
Sharon.Moyer@SacksTierney.com
Adrian L. Barton No. 025359
Adrian.Barton@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT OROZCO; and a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARK S. and MONA BORENSTEIN, husband and wife; *et. al.*,<br><br>**Defendants.** | No. 2:11-cv-02305-PHX-FJM<br><br>**REPLY IN SUPPORT OF DEFENDANTS' TENDER OF FULL PAYMENT AND MOTION TO DISMISS WITH PREJUDICE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(h)(3)**<br><br>(Assigned to the Hon. Frederick J. Martone) |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Orozco argues that his case is separate from any interests of the union when, in fact, opposing counsel stated himself that the union has made it quite clear that there will be no resolution of this case unless the Bakery agrees to the union's demands. Union involvement or not, Orozco's case is moot. Orozco doesn't get a 3 year statute of limitations because he only worked at the Bakery for the past 2 years. Orozco cannot prove any deductions for which he was not paid, even though all of his payroll records have been produced. Orozco has no standing to raise the claims of other potential class members. Orozco must, by a preponderance of the evidence, establish that he personally has a live dispute. He simply cannot meet that standard.

### II. FACTS

In addition to the facts stated in support of the moving papers, on March 30, 2012, the Bakery produced, among other documents, its Employee Pay History Report showing

846787

any uniform laundering deductions made for all employees from November 22, 2009 - December 31, 2011.[1] The Bakery also produced a list of employees for the two years prior to the filing of the Complaint, along with the amounts they were reimbursed in uniform laundering charges. (*Id.*, ¶7, Ex. B). Both of these documents identified the employees by employee identification numbers. Those numbers correspond to the letters and checks that were submitted in support of this motion with the "Declaration of Shirli Borenstein in Support of Defendants' Motion to Dismiss" filed 3/15/12 ("1st S.B. Decl."). (*Id.*, ¶8).

On April 25, 2012, the Bakery produced from CompuPay, the Bakery's payroll service company, the W-2 Forms for Orozco, as well as a comprehensive Employee Pay History Report for Orozco showing, among other things, all hours, pay periods, wages earned, taxes and deductions for the entire time Orozco worked at the Bakery. (*Id.*, ¶¶9 & 10, Exs. C & D). The total wages earned by Orozco and various taxes withheld are consistent throughout all the documents produced. (*Id.*, ¶11). There is no indication in any of the documents that any deduction was ever made from Orozco's pay for anything other than uniform laundering costs and advances that Orozco took. (*Id.*, ¶12). The Bakery does not keep copies of actual pay check stubs, and is unaware of any requirement that it do so. (*Id.*, ¶13). The documents that have already been produced contain all of the payroll information for Orozco that the Bakery keeps. (*Id.*, ¶14). There is simply no other information available from the Bakery's payroll records for Orozco to discover. (*Id.*).

No employees of the Bakery were ever charged for new key cards, time cards or health cards. (*Id.,* ¶¶3 & 16).[2] A Bakery employee in the Maintenance Department since 2007 swears he has never been charged for key cards or time cards, and he is familiar with most of the employees of the Bakery and is unaware of any of them having been so charged

---

[1] Declaration of Vicki Shaw in Support of Defendants' Motion to Dismiss, filed concurrently herewith and incorporated herein by this reference ("Shaw Decl"), ¶6, Ex. A.
[2] Declaration of Robert Crumbley in Support of Defendants' Motion to Dismiss, filed concurrently herewith and incorporated herein by this reference ("Crumbley Decl.") ¶¶3-5; *see also* Second Declaration of Shirli Borenstein in Support of Defendants' Motion to Dismiss filed concurrently herewith and incorporated herein by this reference ("2nd S.B. Decl."), ¶¶9-11, Ex. F.

846787

either.[3] Indeed, while Orozco claims such charges are made upon hire, the pay check stub that he produced with his initial disclosures for the first pay period after he was rehired at the Bakery in August 2010 reflects that no deductions were made for a time or key card. (2nd S.B. Decl., ¶¶5 & 7, Ex. E).

Bakery employees are notified at the time of hire that they are required to obtain a Food Handler Card from Maricopa County in order to work at the Bakery, and at no time has the Bakery agreed to pay for employees' Food Handler Cards. (2nd S.B. Decl., ¶¶9-11, Ex. F; Shaw Decl., ¶15 & 16; Crumbley Decl., ¶¶4&5; Figueroa Decl., ¶4 & 5). With respect to charging for replacement items, while the Bakery did tell employees that there would be a charge for lost key cards, that policy was recommended by the security company to encourage employees to be responsible with their cards. (Shaw Decl., ¶5). Regardless, Orozco never lost or replaced his key card or time card. (Shaw Decl., ¶4).

## III. ARGUMENT

Under the U.S. Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). "Even where the litigation posed a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' 'rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States,* 915 F.2d 699, 701 (D.C. Cir. 1990). While the movant has the burden of proving a case is moot, the plaintiff must defend a Rule 12(b)(1) motion by proving by a preponderance of the evidence that the court has jurisdiction to hear its claims. *Am. Fed. Of Gov't Employees, AFL-CIO v. Rumsfeld,* 321 F.3d 139 (D.C.Cir.2003). A plaintiff must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989).

---

[3] Declaration of Enrique Figueroa in Support of Defendants' Motion to Dismiss, filed concurrently herewith and incorporated herein by this reference ("Figueroa Decl."), ¶2 & 3.

846787

1  When subject matter jurisdiction is factually challenged, "no presumptive truthfulness
2  attaches to plaintiff's allegations, and the existence of disputed material facts will not
3  preclude the trial court from evaluating for itself the merits of jurisdictional claims."
4  *Thornhill Publ'g Co. v. Gen'l Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

5  Here, this case is moot because Orozco has been made whole, and there is no chance
6  that his claim will arise again, as he is no longer eligible to work at the Bakery. (2nd S.B.
7  Decl., ¶¶5 & 8, Ex. C). Despite this, Orozco argues this case is not moot because: (A) he
8  seeks damages for a third year due to allegedly willful violations by the Bakery of the
9  FLSA; (B) he needs discovery to verify that he has been paid in full; (C) other employees
10 who were paid more than minimum wage may be entitled to relief; (D) he was not paid for
11 a time, key or Food Handler Card; (E) he is entitled to prejudgment interest; and (F) his
12 case is distinguishable from *Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199 (11th
13 Cir. 2012). These arguments fail for the reasons set forth below.

### A. Orozco Is Not Entitled To Pay Prior To His November 2009 Start Date

15 Orozco did not work at the Bakery for the three years prior to the filing of his
16 Complaint – he worked from November 2009 to September 2011.[4] He filed his Complaint
17 on November 22, 2011. Orozco was already paid double for all uniform charges that were
18 deducted from his pay for the whole two years he worked at the Bakery.[5] The FLSA allows
19 a plaintiff to extend his *statute of limitations* by an additional year if he can show a willful
20 violation. The FLSA doesn't say that a plaintiff may recover an additional year of back pay
21 for a willful FLSA violation if he didn't actually work there in that third year.

22 Apparently, Orozco wishes to act on behalf of other employees who did work at the
23 Bakery in the past 3 years. But, if "none of the named plaintiffs purporting to represent a
24 class establishes the requisite of a case or controversy with the defendants, none may seek
25 relief on behalf of himself or any other member of the class." *Gen'l Telephone Co. of*

---

[4] "Declaration of Robert Orozco in Support of Plaintiff's Response to Defendants' Tender of Full Payment and motion to Dismiss with Prejudice" filed 4/17/12, ¶2.
[5] "Declaration of Shirli Borenstein in Support of Defendants' Motion to Dismiss" filed March 15, 2012 ("1st S.B. Decl."), ¶21, Ex. B.

846787

4

*Southwest v. Falcon*, 457 U.S. 147 (1982) (holding persons without claims themselves cannot represent a class who may have claims); *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974). It is therefore incumbent upon the named plaintiff to demonstrate that he has been personally injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin,* 422 U.S. 490, 502 (1975); *see also Lewis v. Casey,* 518 U.S. 343, 357 (1996).

Orozco himself has no claim to a 3 year recovery. He only worked at the Bakery for the past 2 years. There is no back pay owed to Orozco – he has been made fully whole.

### B.      **Orozco Has Already Received All Documentation To Verify Payment**

Orozco was already provided all of the payroll records that the Bakery has available for him. (Shaw Decl., ¶¶6-14). While Orozco has indicated that he would like to review all of his pay check stubs, the Bakery does not keep pay check stubs. (Shaw Decl., ¶13). As such, further discovery will do nothing to assist Orozco in establishing his case.

### C.      **Orozco Has No Standing To Assert The Rights Of Dissimilar Employees**

Orozco argues that this case must continue because there might be other employees who made more than minimum wage, but whose deductions still brought them below minimum wage. It is undisputed that Orozco was a minimum wage employee. Orozco has no standing to bring a claim on behalf of employees who were not minimum wage employees. As the case law cited above teaches, it is incumbent upon the named plaintiff to demonstrate that he has been personally injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth,* 422 U.S. at 502; *see also Lewis,* 518 U.S. at 357. As such, Orozco cannot avoid the fact that his claim is moot by arguing on behalf of other employees.

### D.      **Orozco Was Never Charged Other Deductions**

Orozco relies on his scant declaration to argue that he is entitled to reimbursement for other alleged deductions. In considering a Rule 12(b)(1) motion, the Court must review the factual contentions offered, and "[i]n doing so, a conclusory response will not suffice anymore in this jurisdictional context than it would if the ultimate merits were at issue in a

846787

5

1 conventional summary judgment context." *Int'l Ass'n of Machinists & Aerospace Workers
2 v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3rd Cir. 1982).

3 Here, Orozco cannot rely on his own self-serving testimony to survive this motion.
4 Orozco states that to "the best of his recollection," he was charged $10 for a key card and
5 $5 for a time card when he began working at the Bakery, and that these charges are also
6 made if either card must be replaced. However, no Bakery employee is charged for either
7 card upon issuance, and Orozco never lost either card and does not claim that he was ever
8 charged anything under the alleged replacement policy. Most importantly, Orozco's
9 comprehensive payroll records, including his W-2s, show no such deductions at any time,
10 and he states he has no other documents to support his claim. What we do know is that
11 Orozco admits that he was rehired at the Bakery in August 2010, and the pay stub from the
12 first pay check that Orozco received after he was rehired *that Orozco himself produced*
13 does not show any deductions for a key or time card. (2nd S.B. Decl., ¶¶5 & 7, Ex. E).

14 Orozco's claim that he was charged $24 for obtaining a Food Handler Card from
15 Maricopa County may be correct, but that is not a deduction from Orozco's pay - that's a
16 fee paid to Maricopa County. The Bakery is not required by the FLSA or any other law to
17 pay for employees to obtain a Food Handler Card. The card is not for the benefit of the
18 Bakery, it is for the benefit of Orozco. *See generally,* 29 C.F.R. § 531.32. The Food
19 Handler Card of which Orozco complains was taken back from the Bakery by Orozco upon
20 his leaving, and he is free to take it with him to any employer he wishes. (2nd S.B. Decl.,
21 ¶10). Moreover, the Bakery Owner, Payroll Manager, Plant Manager and an employee, all
22 of whom were with the Bakery during Orozco's time there, unequivocally attest that the
23 Bakery has never in the past volunteered to pay for employees' Food Handler Cards. On
24 the contrary, every employee, including Orozco, is clearly advised that he or she must
25 obtain a Food Handler Card from Maricopa County. The FLSA does not require the Bakery
26 to pay for its employees' Food Handler Cards, and the cost of a Food Handler Card was
27 never deducted from Orozco's wages (which he does not allege anyway).

28 Orozco tries to avoid the fact that his payroll records do not show any of the other

846787

deductions he claims by stating that the deductions may have been accounted for somewhere else. That contention is mere speculation and must be rejected. *Int'l Ass'n of Machinists & Aerospace Workers,* 673 F.2d at 711 (self-serving and conclusory allegations in response to a Rule 12(b)(1) motion are insufficient to the same extent they are on motions for summary judgment). To allow this claim on such mere speculation would wholly undermine the 1947 amendments to the FLSA designed to quell the flood of FLSA litigation. 29 U.S.C. §251(a)(setting forth Congress' findings and purpose).

In short, Orozco must win this motion by a preponderance of the evidence. On these facts, Orozco has failed to meet his burden.

### E.  Orozco Is Not Entitled To Prejudgment Interest

The law is well-settled that liquidated damages and prejudgment interest may not be recovered in an FLSA claim because both serve the same purpose - to compensate employees for losses caused by the delayed receipt of wages they are due. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945) (recovery of liquidated damages and prejudgment interest is "double compensation for damages arising from delay in the payment of the basic minimum wages"); *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir.1991) (describing similar purpose of liquidated damages and prejudgment interest); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1102 (3d Cir.1995) (contrasting punitive nature of liquidated damages in ADEA case with non-punitive liquidated damages in FLSA case).

Here, Orozco has already received payment for all timeframes that he worked at the Bakery, plus twice that amount. He is not entitled to prejudgment interest on that payment.

### F.  Orozco Cannot Avoid The Effect Of *Dionne*

In *Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199 (11th Cir. 2012), the Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation, dismissed the plaintiff's FLSA claim as moot after the defendant tendered the full amount of damages sought by the plaintiff. The Court ruled that the plaintiff was not entitled to attorneys' fees because granting a defendant's motion to dismiss a plaintiff's

846787

1 claims as moot is not the same as securing judgment in the plaintiff's favor, as required for
2 a fee award under the FLSA. Orozco argues that *Dionne* is inapposite because he does not
3 concede his claim is moot, as the plaintiff did in *Dionne*, and this lawsuit is not "potentially
4 meritless" because the Bakery paid the uniform laundering monies demanded. Both of
5 these distinctions fail for the following reasons.

6       Subject matter jurisdiction cannot be created or lost simply by the consent or lack of
7 consent by the parties. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,*
8 873 F.2d 1221, 1228 (9th Cir. 1989) (citing *S.E.C. v. Blazon Corp.,* 609 F.2d 960, 965 (9th
9 Cir. 1979)); *see also McClinton v. Vickers Corp.*, 995 F.2d 1067, 1993 WL 191883, at *1
10 (6th Cir. Jun.7, 1993) ("No action of the parties can confer subject matter jurisdiction upon
11 a federal court, and jurisdiction cannot be conferred through the principles of consent,
12 waiver, or estoppel."). As set forth above, Orozco, having been paid for the entire time that
13 he worked with the Bakery, and having brought forth no evidence to refute the Bakery's
14 payroll records reflecting that no other deductions were made from his pay, has no other
15 relief available to him. He is not entitled to prejudgment interest as a matter of law, and the
16 Bakery was never required to supply him a Food Handler Card at all. On these facts,
17 Orozco's claim is moot, whether Orozco agrees that it is or not.

18       As for disputing liability, the Bakery was very clear that it does not concede
19 liability; rather, the Bakery made payment solely to avoid prolonged litigation, which is
20 exactly what this case is quickly turning into - and all over $30 (a $5 time card and $10 key
21 card multiplied by 2). (1st S.B. Decl., p. 4, ¶¶ 22-24). The Department of Labor's Field
22 Operations Handbook ("FOH") states, with respect to overtime pay, that:

23     (b) . . . . The costs of furnishing items that are primarily for the benefit or
convenience of the employer do not qualify as "facilities" under FLSA
24     section 3(m); thus, they may not be included as part of wages due. Further,
deductions for articles that do not qualify as "board, lodging, or other
25     facilities" under FLSA section 3(m), such as tools, equipment, cash register
shortages, and other similar items, may not be made if they cut into required
26     minimum wage or overtime premium pay. . . . . Deductions for non-3(m)
items may be made in an [overtime] workweek *if* their purpose and effect are
27     not to evade the [overtime] requirements of the FLSA *or other law*, and *if*
they are *bona fide* deductions made for *particular items* according to a prior
28     *agreement or understanding* between the employer and employee before the

846787

8

>    work is performed.
>    
>    . . . .
>    
>    (d) Unless there is an agreement as to deductions for particular items, or if the employer reduces an employee's wages for a reason not addressed in the contractual arrangement or for no legitimate reason, the deduction will be considered illegal and will not be allowed during OT workweeks. To determine if these criteria are met, apply the following standards:
>    
>    > (1) Deductions must be for particular items according to an agreement or understanding between the parties: The agreement must be reached before the employee performs the work that becomes subject to the deductions. The agreement must be specific concerning the particular times for which the deductions will be made, and the employee must know how the amount of the deductions will be determined that are included in the agreement (e.g., cash register shortages). The employee must affirmatively agree or assent to the employer's deduction policy. While the employee's assent to the policy may be written or unwritten, the employer bears the burden of proof that an employee has agreed to the deduction policy. . . .

FOH, 6/30/00 at §32j08(b) & (d)(1) (emphasis in original).

Here, the Bakery is likely not liable at all for any of the claims of Orozco because the uniform laundering charges would not take him below minimum wage if Orozco's overtime pay was considered, as §32j08 of the FOH permits.[6] Orozco earned overtime in nearly every pay period in which he worked, so agreed upon deductions from his overtime pay may well have caused him not to fall below minimum wage in any pay period. Orozco admits he was well aware of any alleged time and key card deductions because "Guadalupe" told him about them, and the deduction for shirts appears clearly on his pay checks stubs. But, rather than go through the records and determine for each pay period whether the agreed-upon deduction caused Orozco's pay to fall below minimum wage, and rather than litigate its other various defenses, the Bakery decided to end this litigation (and its expected attendant costs) instead.

Unlike the defendant in *Dionne,* the Bakery voluntarily paid not just the plaintiff, but everyone Orozco alleged is in his "class." That distinction makes this case an even more compelling one for dismissal with prejudice. It is evident that this case was solely

---

[6] This is not the only defense identified by the Bakery to Orozco's claims, and should not be construed as such. Suffice it to say that liability is vigorously disputed in this case.

846787

9

intended to harass the Bakery into making union concessions. Counsel for Orozco does not deny that such is the case, or that his true client who is paying him is the union. This case certainly is not about recovering $30 for a time and key card that Orozco himself cannot even definitely say, much less prove, was ever deducted from his wages. Settlement could have been had in this case, consistent with the long-standing policy of the courts favoring settlement, but for the fact that counsel for Orozco is looking out for the union's interests, not for those of Orozco or his "class." *See, generally, Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting with approval "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

Given the unique circumstances of this case, and in light of *Dionne,* this case has become moot, and no attorneys' fees should be permitted. 29 U.S.C. § 216(b) provides for a mandatory fee award where a plaintiff secures a judgment on an FLSA claim. As in *Dionne,* no fees should be permitted once this case is dismissed as moot, as there will be no judgment. Additionally, a fee award is only mandatory under §216(b) "[b]ecause the FLSA is intended to provide workers with the full compensation due under the law, requiring a claimant to pay attorney's fees incurred to enforce his FLSA rights would frustrate the statute's underlying purpose." *McBurnie v. City of Prescott,* No. CV-09-8139, 2010 WL 5344927 at *3 (D.Ariz. 2010). As explained more fully in *Maddrix v. Dize,* 153 F.2d 274, 275-76 (4th Cir. 1946), Congress intended that a successful FLSA claimant "should receive his full wages plus the penalty without incurring any expense for legal fees or costs."

Here, no fees are warranted because the UFCW is funding this litigation in order to promote the union's interests. (2nd S.B. Decl., ¶12). §216(b) seeks to protect the employee with little resources from being overwhelmed by employers with much greater resources. That simply is not the case here. Moreover, the union made no efforts to settle this lawsuit before it was filed. On these facts, no attorneys' fees are warranted.

## IV. CONCLUSION

The Bakery respectfully requests that the Complaint be dismissed, with each side to bear its own attorneys' fees and costs.

846787

1  DATED this 21st day of May, 2012.

                              SACKS TIERNEY P.A.


                              By: */s/ Adrian L. Barton*
                                  Sharon S. Moyer
                                  Adrian L. Barton
                                  Attorneys for Defendants

846787

CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nicholas J. Enoch, Esq.
Jarrrett J. Haskovec
LUBIN & ENOCH, P.C.
349 North Fourth Avenue
Phoenix, AZ 85003-1505
Attorneys for Plaintiffs

I hereby certify that on May 21, 2012, I caused to be hand-delivered the attached document to the following recipient:

Honorable Frederick J. Martone
District of Arizona Court
401 W. Washington Street
Phoenix, AZ 85003

*/s/ Silvia Miranda*

846787